# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CITYESCAPE GARDEN & DESIGN, LLC, an Illinois limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF CHICAGO, an Illinois municipal Corporation, JAMIE L. RHEE, Officer for the Department of Procurement Services, in her official capacity, and ROSEMARIE S. ANDOLINO, Commissioner for the Department of Aviation, in her official and personal capacities, and JONATHAN D. LEACH, Chief Operating Officer for the Department of Aviation, in his official and personal capacities, <br><br> Defendants. | Case No. 14 C 5404 <br><br> Judge John Z. Lee |

## MEMORANDUM OPINION AND ORDER

In this action for breach of contract, Plaintiff CityEscape Garden & Design, LLC ("CityEscape") and Defendants the City of Chicago, Jamie L. Rhee, Rosemarie S. Andolino, and Jonathan D. Leach (collectively, "the City") have filed cross-motions for partial summary judgment. In their motions, the parties urge the Court to adopt their respective interpretations as to the meaning of the contractual term "full-time." Because the Court concludes that the term "full-time" as it is used in the contract is ambiguous as a matter of law, both motions must be denied.

## Factual Background

In December 2011, CityEscape successfully bid on a contract to provide landscaping services to the City at its O'Hare and Midway airports. Pl.'s LR 56.1(a)(3) Stmt. ¶ 6. The five-

year agreement, which was drafted by the City, went into effect on January 1, 2012, and was set to expire on December 31, 2016. *Id.* ¶¶ 6, 17. Although the contract covered that entire period, it also "recognize[d] that the [services provided under it] are seasonal in nature" and specified an approximate nine-month work period spanning from March through November each year. *Id.* ¶ 23; Rivera Decl., Ex. 1, Pt. 2, at 59.

Particularly relevant to this dispute is Section 11.5 of the contract. Section 11.5 lists "the minimum qualifications of Key Personnel that [CityEscape] must employ." Pl.'s LR 56.1(a)(3) Stmt. ¶ 19; Rivera Decl., Ex. 1, Pt. 2, at 59. Amongst those qualifications are a "full-time Superintendent," a "full-time Foreman," and "[f]ull-time crews, consisting of a minimum of ten (10) experienced laborers, at each Airport." Pl.'s LR 56.1(a)(3) Stmt. ¶ 19; Rivera Decl., Ex. 1, Pt. 2, at 59. With regard to the full-time crews, the contract acknowledged that "staffing can increase and change according to the task at hand." Pl.'s LR 56.1(a)(3) Stmt. ¶ 20; Rivera Decl., Ex. 1, Pt. 2, at 59. The term "full-time" is not defined in the written agreement.

CityEscape began providing services in March 2012. Pl.'s LR 56.1(a)(3) Stmt. ¶ 30. Come early 2013, the City began requesting CityEscape provide time sheets reflecting the hours worked by its employees at the airports. *Id.* ¶ 33. An email sent to CityEscape on March 15, 2013 detailed the City's expectations in this regard: "[b]ased on . . . 'full time' equaling forty (40) hours per week, CityEscape would need to provide at a minimum the following labor to satisfy the contractual requirements for maintenance:

| **Title (City)** | **O'Hare** | **Midway** |
|---|---|---|
| Foreman (1) | 1,560 | 1,560 |
| Laborer (10) | 15,600 | 15,600 |
| Truck Driver (1) | 1,560 | 1,560 |

2

*Id.* ¶ 34. Beginning with CityEscape's August 2013 invoice, the City began auditing and withholding payments to CityEscape based on "its failure to meet the minimum staffing requirements." Def.'s LR 56.1(b)(3)(B) Stmt. ¶ 38.

Ultimately, the City—allegedly without CityEscape knowing—solicited a re-bid for similar landscaping services at O'Hare and Midway in November 2013. Def.'s Answer ¶¶ 137–38. CityEscape eventually discovered this fact and requested the City postpone the opening of re-bidding. The City declined, prompting CityEscape to initiate this lawsuit seeking, among other things, damages for breach of contract and "to enjoin [Defendants] from terminating the Contract without cause and from placing the services . . . up for re-bid." Am. Compl. ¶¶ 162, 187.

## **Legal Standard**

Summary judgment is proper in cases where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has sufficiently demonstrated the absence of a genuine issue of material fact, the non-movant must then set forth specific facts demonstrating that there are disputed material facts that must be decided at trial. *Id.* at 321–22.

## **Analysis**

The parties do not meaningfully dispute any of the facts relevant to these motions. In fact, the parties' disagreement here purely boils down to the meaning of the contractual term "full-time." The City contends "full-time" means "eight (8) hours per day and forty (40) hours per week." Def.'s Mem. Opp'n 2. CityEscape disagrees, arguing "full-time" imposes no such

time constraints, but is simply a denomination "left to the discretion of the employer." Pl.'s Reply 3.

Illinois courts apply the "four corners" rule in interpreting contracts. *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999). This means that "[i]f the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence." *Id*. Here, the parties agree the term "full-time" is unambiguous and accordingly move the Court to interpret the term accordingly. *See* Pl.'s Mem. 5; Def.'s Mem. Opp'n 2.

The existence of ambiguity, however, "is a question of law to be determined by the court." *Ahsan v. Eagle, Inc.*, 678 N.E.2d 1238, 1240 (Ill. App. Ct. 1997). So while the parties may stipulate to certain "facts to allow the court to decide questions as a matter of law," *Workforce Solutions v. Urban Servs. of Am., Inc.*, 977 N.E.2d 267, 277 (Ill. App. Ct. 2012), any stipulation as to a question of law itself is not similarly binding. *In re Marriage of Adams*, 551 N.E.2d 635, 638 (Ill. 1990); *Cory Corp. v. Sauber*, 284 F.2d 767, 773 (7th Cir. 1960). And upon further review of the parties' briefs and arguments, the Court ultimately cannot conclude that the term "full-time" is unambiguous as a matter of law.

A contractual term is unambiguous "if a court can ascertain its meaning from the general contract language." *William Blair & Co., LLC v. FI Liquidation Corp.*, 830 N.E.2d 760, 770 (Ill. App. Ct. 2005). Put differently, if a term "can reasonably be interpreted in more than one way due to the indefiniteness of the language," it is ambiguous. *Id.* at 769. In this sense, the parties' arguments prove too much.

For example, the City contends "[i]t is generally accepted that a 40 hour week is the normal and customary standard by which to measure full-time employment." Def.'s Mem.

4

Opp'n 7. At the same time, however, definitions to which the City cites reveal the term is not so definite. One source defines "full-time" as "the normal or standard period of work per day or per week"; but it goes without saying that "the normal or standard period of work" can vary significantly depending on the nature of employment and other circumstances. *See id.* at 6. Other definitions cited by the City provide typical *ranges* of hours for full-time employees. *See id.* at 7–8 (describing full-time employment as typically involving "35 to 40 hours each week" or "between 35 and 44 hours" per week). It may well be "full-time" was intended to mean a minimum of 40 hours per week. However, the Court finds it indicative of the term's ambiguity that that the City attempts to assign a precise numerical value—that is, 8 hours a day, 40 hours a week—when its own authority suggests a variety of potential work arrangements.

There is also the possibility that one's designation as a "full-time" employee may not be directly linked to a minimum number of hours worked per week at all. *See Kaufman v. Bd. of Trustees, Cmty. Coll. Dist. No. 508*, 522 F. Supp. 90, 102 (N.D. Ill. 1981) ("Although we noted that an approximate 40 hour workweek is the normal or customary standard by which to measure most full-time employment, we also rejected a definition of the term that would require a person to work an absolute minimum or maximum number of hours at a particular occupation in order to be considered a full-time employee. Rather, we noted that there are situations in which a person might be considered to be employed full-time despite the fact that he or she does not technically work a full 40 hours a week."). As CityEscape notes, the parties' contract was seasonal in nature, and given the nature of the work, "staffing needs may be significantly greater in certain periods of the season (e.g., in the summer) than in others (e.g., in March or November)." Pl.'s Mem. 11. This is not to say that CityEscape's interpretation is correct, but simply that the Court cannot find from the face of the contract that there is only one reasonable

interpretation of the term "full-time."  Accordingly, notwithstanding the parties' agreement that the disputed term is unambiguous, the Court is constrained to conclude that it is not as a matter of law.

Because the term "full-time" is ambiguous, the parties are free to rely upon extrinsic evidence to demonstrate its meaning.  *William Blair & Co.*, 830 N.E.2d at 770.  Here, the parties cite to numerous documents and testimony to support their respective interpretations of the term.  Based upon a review of the summary judgment record, however, the Court finds that genuine issues of material fact exist as to what the parties intended the term "full-time" to mean.  Accordingly, the motions for partial summary judgment are denied.

## Conclusion

For these reasons, the Court denies both Plaintiff's motion for partial summary judgment [91] and Defendants' motion for partial summary judgment [113] and strikes Plaintiff's motion to take judicial notice [96] as moot.


**SO ORDERED**                                   **ENTER: 9/24/15**

                                                 _____
                                                 **JOHN Z. LEE**
                                                 **United States District Judge**