# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **CITYESCAPE GARDEN & DESIGN, LLC,** an Illinois limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | 14 C 5404 |
| v. | ) ) ) | Judge John Z. Lee |
| **THE CITY OF CHICAGO,** an Illinois municipal Corporation, **JAMIE L. RHEE,** Officer for the Department of Procurement Services, in her official capacity, and **ROSEMARIE S. ANDOLINO,** Commissioner for the Department of Aviation, in her official and personal capacities, and **JONATHAN D. LEACH,** Chief Operating Officer for the Department of Aviation, in his official and personal capacities, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The City of Chicago filed counterclaims for breach of contract, indemnity, and declaratory judgment against CityEscape Garden & Design, LLC, arising out of a contract to provide landscape services at O'Hare and Midway airports. CityEscape brought a motion to dismiss the counterclaims [129], arguing that the contract forecloses many of the City's claims. For the reasons stated below, the Court denies CityEscape's motion to dismiss.

## Factual Background

In December 2011, CityEscape successfully bid on a contract to provide landscaping services to the City at its O'Hare and Midway airports. *See* Am. Compl. ¶ 10, Notice of Removal Ex. B (part 2 of 3), ECF No. 2. The five-year agreement, which was drafted by the City, went into effect on January 1, 2012, and is set to expire on December 31, 2016. Am. Compl. ¶ 43.

The contract requires CityEscape to perform three broad categories of work at the airports: (1) Landscape and Irrigation Maintenance, (2) Seasonal Flower Installation, and (3) New and Replacement Work. Exhibits 1, 2, 3, Ex. A to Am. Compl. at 229, 230, 243, 251, ECF No. 76 ("Contract"). The specific work involved for each category is outlined in a separate exhibit to the Contract and matches up with certain bid line items that CityEscape submitted to secure the Contract. Exhibit 1, which describes Landscape and Irrigation Maintenance, covers bid line items 1 to 2; Exhibit 2, which describes Seasonal Flower Installation, covers bid line item 3; Exhibit 3, which describes New and Replacement Work, covers bid line items 4 to 31. Contract Exs. 1–3. The main portion of the Contract lists the staffing requirements and the qualifications required for the contractor's employees. Contract § 11.

In addition to describing the work to be done, the Contract contains provisions that explain the procedures that must be followed in case either party fails to perform. Section 2.66 provides remedies for the City if there is an event of default. Contract § 2.66. In order to invoke the remedies listed in that section, the Chief Procurement Officer (CPO) must issue a Default Notice to CityEscape. Contract § 2.66.A. Although the section lists particular remedies the City may use, those remedies are not exclusive of other remedies available at law. Contract § 2.66.C. On the other hand, if CityEscape has a dispute arising from the Contract, it must bring that dispute to the CPO. The sole and exclusive way of challenging a decision by the CPO is through a writ of certiorari. Contract § 2.67.

The City alleges in its answer that CityEscape failed to meet its minimum maintenance, staffing, equipment, and performance obligations. *See* Countercl. ¶ 71, ECF No. 88. Although CityEscape and the City submitted some of the disputes to the CPO, the City eventually solicited

bids for the services covered by the Contract. Ex. D–U, Notice of Removal Ex. B (part 3 of 3), ECF No. 2.

CityEscape filed suit alleging breach of contract and seeking an injunction to prevent the City from re-bidding the Contract. Am. Compl. ¶ 158–67. The City submitted its answer along with counterclaims for breach of contract, indemnity, and declaratory judgment. Answer, Affirmative Defense & Countercl., ECF No. 88.

## Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint or counterclaim. *Christensen v. Cty. of Boone, Ill.*, 483 F.3d 454, 457 (7th Cir. 2007); *Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) (applying the same standard in reviewing a motion to dismiss a counterclaim as with a motion to dismiss a complaint). Under the federal notice pleading standards, a complaint or counterclaim "need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept [ ] as true all well-pleaded facts alleged, and draw[ ] all possible inferences in [the plaintiff's] favor." *Tamayo*, 526 F.3d at 1081.

Illinois courts apply the "four corners" rule in interpreting contracts. *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999). Thus, "[i]f the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence." *Id*. The existence of ambiguity "is a question of law to be determined by the court." *Ahsan v. Eagle, Inc.*, 678 N.E.2d 1238, 1240 (Ill. App. Ct. 1997). "[I]f the

language of the contract is susceptible to more than one meaning, it is ambiguous." *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011).

## Analysis

I.  **Default Notice from the CPO**

Section 2.66 of the Contract creates a procedure that must be followed for the City to invoke certain remedies. After the CPO finds that the contractor is in default, she must either give the contractor an opportunity to cure or issue a "Default Notice." Contract § 2.66.A. "After giving a Default Notice, the City may invoke" certain enumerated remedies, including the right to money damages and the right to withhold part of the contractor's compensation. Contract § 2.66.A. In its motion to dismiss, CityEscape argues that the City's counterclaims for breach of contract and declaratory judgment are improper because the CPO never issued a Default Notice. *See* Mem. Supp. Mot. Dismiss 7–9. As the City points out, however, a provision in that same section specifically states that the remedies listed are not intended to be exclusive of other remedies existing at law. Contract § 2.66.C. Because the remedy (and the procedure) set out in Section 2.66 is not exclusive, the City may bring its counterclaims for breach of contract and declaratory judgment.

CityEscape tries to avoid the effect of the non-exclusivity clause by arguing that, although the remedies listed are not exclusive, the procedure that requires the issuance of a Default Notice must still be followed. *See* Reply 4–5. But this argument improperly divorces the procedure required to trigger the remedies listed in Section 2.66.A from the availability of legal remedies generally. Thus, the City must comply with the requirements of 2.66A only if it wishes to invoke the listed self-help remedies in that section. If the City wishes to exercise other remedies available to it at law, such as this counterclaim for breach of contract, it need not obtain

a Default Notice from the CPO. To require otherwise would limit the types of remedies available and run counter to Section 2.66.C.

## II. The Full-Time Requirement

CityEscape's motion to dismiss also includes arguments regarding the meaning of the term "full-time" in the Contract. That issue has already been addressed in the Court's Memorandum Opinion and Order denying the parties' cross-motions for summary judgment. *See* Mem. Op. & Order, ECF No. 142. In that order, the Court determined that the term "full-time" is ambiguous. Accordingly, CityEscape's motion to dismiss the City's counterclaim relating to the term "full-time" is denied.

## III. Separate Irrigation and Seasonal Work Crews

Next, CityEscape seeks to dismiss the City's counterclaims for breach of contract and declaratory judgment on the basis that the City cannot state a claim based on the crews used to perform irrigation and seasonal work. *See* Mem. Supp. Mot. Dismiss 10–12. The City's counterclaims are grounded, in part, on the contention that CityEscape failed to provide crews to perform irrigation work and plan seasonal flowers that were separate from the landscape crew. *See* Countercl. ¶¶ 146(c)–(d), 156(b)–(c). CityEscape argues that the Contract contains no requirements that the landscape crew cannot perform those other duties.

Taking all reasonable inferences in its favor, the City has stated a claim regarding CityEscape's use of the landscape crew to do irrigation maintenance. The Contract contains a staffing plan—in which it describes the minimum staffing that CityEscape must provide—and a list of qualification requirements. The staffing plan requires that CityEscape provide ten "Laborers" at each airport. Contract § 11.19. Although that section of the Contract does not define "Laborers," Section 11.5 provides more detail.

5

Section 11.5, titled "Requirements," first states that CityEscape must provide full-time crews consisting of ten landscape laborers at each airport. In the same section, there is another entry requiring that CityEscape provide an irrigation maintenance crew and foreman with demonstrated maintenance experience. (These requirements are then repeated in Exhibit 1 of the Contract, which contains specifications for maintenance. Contract Ex. 1 Part 1.3.D.4, 1.3.D.7.) The fact that the items are listed separately suggests that the landscape crew is a group different from the irrigation maintenance crew.

In addition, in explaining the tasks involved in irrigation maintenance, the Contract states that "other landscape maintenance personnel are to be vigilant in detecting irrigation problems and reporting them immediately to the irrigation maintenance subcontractor." Contract Ex. 1 Part 3.6.A.3. This provision too suggests a landscape maintenance crew that is separate from the irrigation maintenance crew.

CityEscape argues that if the Contract meant to prohibit the landscape crew from performing irrigation maintenance, then it would have explicitly done so—as it did elsewhere in the Contract. *See* Mem. Supp. Mot. Dismiss 12 (citing Contract § 11.9 ("New Landscape Work must be installed by qualified personnel that are separate and distinct from the maintenance crew.")). But CityEscape fails to note that the Contract also explicitly states when work can be done by the maintenance crew. *See* Contract § 11.9 ("Replacement Landscape Work will be performed by the Maintenance Crew."). Because the Contract does not explicitly state whether irrigation maintenance may be done by the landscape crew, the provision CityEscape cites is of little help. The City has thus stated a claim based on CityEscape's use of the landscape crew to perform irrigation maintenance.

Similarly, the Contract does not clearly allow CityEscape to use the landscape crew to install the seasonal flowers. The Contract divides the work to be done into three categories, which are each described in detail in the exhibits to the Contract: (1) Landscape and Irrigation Maintenance (Exhibit 1), (2) Seasonal Flower Installation (Exhibit 2), and (3) New and Replacement Work (Exhibit 3). Contract Exs. 1–3. Each category of work covers a range of the bid line items. Exhibit 1 covers bid line items 1 to 2; Exhibit 2 covers bid line item 3; Exhibit 3 covers bid line items 4 to 31. Contract at 117, 130, 138.

The landscape crew is included in the specifications for the Landscape and Irrigation Maintenance work. Contract Ex. 1 Part 1.3. The installation of seasonal flowers is contained in a separate category, and the Contract expressly provides that "[i]nstallation of annual flowers is not included in this maintenance section of the contract." Contract Ex. 1 Part 3.4.A.1. Furthermore, bid line item 3, which covers the seasonal flowers, includes the labor required to install the flowers.[1] Accordingly, the City has asserted a viable claim for breach of contract and declaratory judgment based on CityEscape's alleged double-billing with regards to time spent on maintenance work and seasonal flower installation.

Perhaps CityEscape may prevail at the summary judgment stage after the parties have had an opportunity to conduct discovery. But at this preliminary stage, taking all reasonable inferences in the City's favor, the Court finds that the City has stated a claim.

---

[1] As with the irrigation maintenance, the fact that the contract specifically prohibits the landscape crew from performing New Landscape Work does not help CityEscape's argument about the installation of seasonal flowers. Contract § 11.9. The sentence that follows explicitly allows the landscape crew to do Replacement Landscape Work. Contract § 11.9. What these sections do is determine whether the landscape crew, whose work is detailed in Exhibit 1, can do work detailed in Exhibit 3. The contract is silent regarding the landscape crew's ability to do work detailed in Exhibit 2.

## IV. Truck Drivers

CityEscape also argues that the City cannot state a claim for breach of contract and declaratory judgment based on the use of members of the landscape crew as truck drivers. Although the Contract requires one truck driver at each airport, CityEscape argues that there is no requirement in the Contract that prohibits members of the landscape crew from performing that task. *See* Mem. Supp. Mot. Dismiss 12–14.

The Court disagrees. Section 11.9 of the Contract sets out the minimum staffing requirements for CityEscape. For each airport, the list requires a superintendent, a horticulturist, a foreman, an arborist, ten laborers, and a truck driver. Contract § 11.9. In the absence of any further provision, this list is enough to at least generate ambiguity about whether a laborer can be the truck driver for each airport. If a contract requires a supervisor, three workers, and a secretary, it would by no means be clear that the one of the workers could double as the supervisor and the secretary. With only the text of the Contract as a guide, and after providing the City with the benefit of all reasonable inferences, the Court cannot say that the City's claim should be dismissed at the pleading stage.

## V. Duty to Submit Disputes to the CPO

The City's counterclaim alleges that CityEscape breached the Contract by filing the complaint instead of submitting the dispute to the CPO. In its motion to dismiss, CityEscape makes essentially two arguments for why the breach of contract counterclaim must fail.

First, CityEscape argues that it has submitted its disputes to the CPO. It is certainly true that CityEscape and the City submitted various issues to the CPO. For instance, in its letter dated May 28, 2013, CityEscape asked the CPO to determine whether the Contract required its workers to work a minimum number of hours. Ex. D, Notice of Removal Ex. B (part 3 or 3). That dispute is clearly the predecessor of the issue regarding the term "full-time" in this litigation. There are,

however, other issues that CityEscape raised in its complaint that were never squarely presented to the CPO. The claim for breach of contract alleges that the City changed the terms of the Contract, including by requiring that the truck drivers be separate from the ten-person landscape crew. *See* Am. Compl. ¶¶ 94, 187.[2] Because those particular issues were never presented to the CPO, the City's claim cannot be dismissed on the basis that CityEscape complied with the Contract.

Next, CityEscape argues that, even if it has an obligation to submit these disputes to the CPO, it still has time to do so. Because the regulations cited in the Contract allow a dispute to be raised up to 120 days after termination of the Contract, CityEscape contends that it still has time to exhaust the remedy set out in the Contract. At a minimum, the Contract is ambiguous as to whether CityEscape may file suit and then submit a dispute to the CPO. The relevant section states: "Except as otherwise provided in this Contract, Contractor must and the City may bring any dispute arising under this Contract which is not resolved by the parties to the Chief Procurement Officer for decision based upon the written submission of the parties." Contract § 2.67. The Contract goes on to say that the "sole and exclusive remedy to challenge the decision of the Chief Procurement Officer is judicial review by means of a common law writ of certiorari." *Id.* The requirement that CityEscape *must* submit any dispute to the CPO in conjunction with the prescribed method for reviewing the CPO's decisions at least suggest that CityEscape has to exhaust the Contract's remedy before coming to court.

---

[2] Although CityEscape appears to argue that it did not have the opportunity to present all its disagreements to the CPO, that question is not properly before the Court on a motion to dismiss. Instead, the question here is whether the City has stated enough factual material to support its claim that CityEscape breached the contract by failing to submit all its disputes to the CPO.

## Conclusion

For the reasons stated herein, CityEscape's motion to dismiss the counterclaims [129] is denied.


**IT IS SO ORDERED.**  ENTERED    1/20/16

_____
**John Z. Lee**
**United States District Judge**